UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Robert Coker, | ) C/A No. 4:10-249-HFF-TER |
| Plaintiff, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| Warden Advisor Mr. Scottie Bodiford, | ) |
| Defendant. | ) |

## I. PROCEDURAL BACKGROUND

The plaintiff, Robert Coker ("Plaintiff"), filed this action under 42 U.S.C. § 1983[1] on February 9, 2010, alleging violations of his constitutional rights. During the time of the matters alleged in his complaint, plaintiff was housed at the Greenville County Detention Center (GCDC). Defendants filed a motion for summary judgment on July 9, 2010, along with a memorandum and exhibits in support of said motion. (Document #37). Because plaintiff is proceeding pro se, he was advised on or about July 12, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment could result in the dismissal of his complaint. The plaintiff filed a response in opposition to the motion for summary judgment on July 26, 2010. (Doc.#42).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

1

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that defendant violated his constitutional rights at the GCDC when he was held for eight days after the charge for armed robbery against him was dropped. Plaintiff seeks monetary damages for being held eight days on "no charges."

Defendant filed a motion for summary judgment along with an affidavit, exhibits, and a memorandum in support. Defendant asserts among other things, that plaintiff has failed to exhaust his administrative remedies and, therefore, his complaint should be dismissed.

### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on

the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## D. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendant has pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and have moved for summary judgment on that basis as well as on the merits of the allegations.

Defendant, Scotty Bodiford, submitted his affidavit in which he attests that he is employed by Greenville County as the Jail Administrator for the GCDC. Bodiford asserts that an inmate at the GCDC has available to him the GCDC grievance procedure of which he attached a copy. (Bodiford affidavit, doc. #37-2). An inmate initiates the grievance procedure by completing an Inmate Request Form (GCDC Form 502) within 15 days of the incident and by writing the word "Grievance" on the top of the form. (Id.). Each grievance is limited to a single incident. (Id.). The grievance is then reviewed by the operations sergeant or watch commander. (Id.). If the inmate is dissatisfied with that officer's decision, the inmate must forward his grievance to the Jail Administrator. (Id.). The inmate may appeal the Jail Administrator's decision to the County Administrator for the Department of Public Safety. (Id.).

Bodiford attests that plaintiff did not complete a GCDC Form 502 until January 12, 2010, more than one year and three months after he had been released for the charges that are the subject of this lawsuit. (Id.). Plaintiff completed Form 502 during a separate incarceration, claiming that in 2008 GCDC had held him in jail for eight days past the date he was supposed to be released. (Id.). The GCDC responded to the Form 502 by explaining that GCDC had not received official notice of the dismissal of his charges until the day of his release, September 2, 2008. (Id.). The Form 502 was not an inmate grievance because plaintiff failed to follow grievance procedure by writing "Grievance" at the top of the form. (Id.). Even if it had been an inmate grievance, plaintiff failed to

initiate the grievance within 15 days of the incident and failed to appeal the decision to the Jail Administrator as required. (Id.).

The Prison Litigation Reform Act ("PLRA") requires that a prisoner[2] exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though plaintiff claimed he was afraid); *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

---

[2] A "prisoner", is defined to mean, "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." § 1997e(h). Thus, exhaustion of administrative remedies is also required of pretrial detainees.

Based on the evidence presented, it is recommended that defendant's motion for summary judgment (doc. #37) be granted for failure to exhaust administrative remedies. In the alternative, the merits will be addressed.

### E. MERITS/ANALYSIS

As previously discussed, plaintiff alleges that he was wrongfully held for eight days at the GCDC. Plaintiff argues that defendant caused him damage by failing to release him from incarceration for eight days after the criminal charges had been dismissed or otherwise disposed of by the court.

In Bodiford's affidavit, he attests that plaintiff was booked into the GCDC on July 16, 2008, pursuant to two bench warrants for failure to appear at hearings concerning two separate charges, strong arm robbery, and possession of crack cocaine. (Bodiford's affidavit). On August 25, 2008, GCDC received a fax on its secure fax machine in GCDC's population management office indicating that the Court of General Sessions sentenced plaintiff to time served and probation for Warrant J482278, for failure to appear for his charge of possession of crack. (Id.). Plaintiff remained in GCDC custody at that time because the court had not informed GCDC of any disposition of the other warrant, Warrant J482277 (strong arm robbery failure to appear charge). (Id.). On September 2, 2008, GCDC received a fax from the court on GCDC's secure fax machine in GCDC's population management office, indicating that the charges included in Warrant J482278 (failure to appear for strong arm robbery charge) had been dismissed. (Id.). Upon receipt of the dismissal of the charges underlying the warrant, GCDC processed plaintiff's release pursuant to GCDC policy, and GCDC released plaintiff on September 2, 2008. (Id.). The "Date of Disposition" that the court provided on

its "General Sessions Tracking Sheet" was August 29, 2008, four days prior to the date that GCDC released him. (Id. and Exhibit B attached). The fax tag line shows that GCDC did not receive this document until September 2, 2008. (Id.).[3] Plaintiff had a negative balance in his GCDC account and had no money for transportation. (Id.). The GCDC gave plaintiff $20.00 on September 2, 2008, to assist him in obtaining transportation from the jail. (Id.).

Defendant argues that regardless of the reasons for the delay, plaintiff can present no evidence that he caused it. Bodiford attests that the GCDC receives communications from the courts and the Solicitor's office concerning GCDC inmates through a secure fax located in GCDC's population management office. (Id.). Once GCDC received the communication from the court on September 2, 2008, plaintiff was released immediately. (Id.).

Based on the evidence before the court, plaintiff has failed to show that this defendant violated his constitutional rights. Therefore, it is recommended that defendant's motion for summary judgment be granted.

## F. QUALIFIED IMMUNITY

Defendant argues that he is entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendant argues that the plaintiff is unable to state a constitutional claim against him because he followed the standard operation procedure for receiving communications

---

[3] Defendant asserts that "the delay in the court sending this document to GCDC was likely due to August 29, 2008, being a Friday and September 1, 2008 being Labor Day. Therefore, the next day that the court was open was September 2, 2008." (Brief).

from the court concerning the disposition of the criminal charges pending against plaintiff prior to his release.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a

> reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendant violated any of his clearly established constitutional or statutory rights. Therefore, defendant is entitled to qualified immunity in his individual capacity. Thus, the undersigned recommends that the defendant's motion for summary judgment be granted on this issue.

### III.  CONCLUSION

Based on the above reasoning, it is RECOMMENDED that Defendant Bodiford's motion for summary judgment (document #37) be GRANTED and this claim dismissed.

It is FURTHER RECOMMENDED that and all other outstanding motions be deemed MOOT.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
September 17, 2010  United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**